**Carl F. Hoffman, et al., Plaintiffs-Appellants, v. Loren O. Wilson, Defendant-Appellee.**

**Gen. No. 64–94.**

Second District.

June 21, 1965.

Rehearing denied July 19, 1965.

Warren H. Badger and George F. Nichols, of Dixon, for appellants.

Gunner and Keller, of Dixon (William R. Gunner, of counsel), for appellee.

MR. JUSTICE MORAN delivered the opinion of the court.

A complaint consisting of two counts charging negligence on the part of the defendant, Loren O. Wilson, was filed by the plaintiffs. One count alleged injuries to Carl F. Hoffman, the other count to his wife, Edna

G. Hoffman, plaintiffs herein. The defendant's answer contained a general denial of all of the material matters. The jury's verdict found the defendant not guilty, the trial court denied plaintiffs' motion for a new trial, and this appeal follows.

Plaintiffs have raised ten points of error allegedly committed in the trial of the cause. They assert that defense counsel was guilty of improper argument in his closing statement to the jury; six more of the alleged errors relate to the cross-examination of one of the plaintiffs and the direct examination of a doctor for the defense; another assignment of error concerns an instruction; the ninth assignment is directed toward a conversation between the judge and jury after commencement of the jury's deliberations; the final point is that the verdict of the jury was manifestly against the weight of the evidence.

The negligence averred arose out of an automobile collision which took place in Dixon, Illinois, on Christmas Day, 1961. The plaintiffs, with Carl Hoffman driving and his wife seated beside him, were stopped on West Third Street in preparation for a right-hand turn into the driveway entrance of their daughter's home. The road was covered with packed snow and ice and it was dusk. It had snowed during the night and the plows had created a one-foot snow embankment along the curbs. Just twenty feet to the east was a viaduct. The defendant, upon entering this viaduct, noticed the plaintiffs' car for the first time and applied his brakes. The evidence is in conflict as to whether or not the plaintiffs' car had either its lights on or its turn signal operating. The defendant's car struck the rear of plaintiffs' car, and, according to plaintiffs' version, their car moved sixty to sixty-five feet. Defendant's version was that his car moved five feet after the collision and plaintiffs' car was about 10 feet beyond his when it came to a stop. Defendant

testified that his speed was fifteen to twenty miles an hour and Carl Hoffman testified that defendant was traveling fifty miles an hour. As a result of the impact, Carl Hoffman complained that he received a cervical spondylosis and a lumbar spondylosis. Mrs. Hoffman was treated as a clinical patient following release from the hospital and had an uneventful recovery.

█ The first error urged by plaintiffs is that counsel for the defendant in his closing statement made improper remarks to the jury. Since a court reporter was not present, there is no transcript of the argument before us. However, plaintiffs' attorney attached to his post-trial motion an affidavit which purports to set forth the substance of the allegedly improper remarks. Without going into the propriety of such a procedure, suffice it is to say that "alleged improper remarks of counsel in argument to the jury, not preserved in the transcript of the proceedings on the trial, but sought to be presented on an ex parte affidavit of opposing counsel, or included in an affidavit on a motion for a new trial, will not be considered by the reviewing court." ILP, Appeal and Error, Sec 516. See also, Augustine v. Stotts, 40 Ill App2d 428, 189 NE2d 757.

During the trial, Carl Hoffman testified on direct examination that the symptoms of his injuries were headaches, soreness in the back of his neck and nausea. On cross-examination, he was asked if he had ever experienced any of these symptoms prior to this accident and he answered that he had not. He further stated that he had never had prior medical treatment, nor did he recall being injured previous to this accident. Counsel for the defense then brought to light the fact that in March, 1957, he had suffered a fractured L–1 vertebra; that he was treated by one Dr. Edward Murphy; that he had received two thousand

dollars under the Workmen's Compensation Act for the injury; and that in 1948 and again in 1961, the year of the accident, he had been a patient at Hines Hospital, where he experienced headaches and nausea. Counsel for plaintiffs made one objection, or remark, during this cross-examination:

"Q. Look at this paper marked defendant's Exhibit 1, and tell me if that refreshes your recollection or memory as far as the fractured vertebra is concerned?

Mr. Nichols: I don't understand the materiality of this, is Mr. Gunner taking the position the injury in this case is an aggravation. That would make no difference.

The Court: I think he can show it.

A. I don't recall ever seeing this, I never did."

Later, during the defense portion of the case, Dr. Murphy, defendant's witness, was questioned on direct examination about the fractured vertebra of 1957. Another objection was made, in the following context:

"Q. How long was Mr. Hoffman under your care for this condition you described?

A. That was in March, until the following October, I believe.

Mr. Badger: I can't see the materiality of this. I am objecting to it.

The Court: I think it is.

Q. Mr. Hoffman is not under your care, now, is he?

A. No.

Q. Cross examine."

■ Plaintiffs argue that these inquiries about the prior injury, together with the closing statement of the defendant, amounted to an affirmative defense, not pleaded, which took them by surprise. They argue further that the cross-examination was an attempt by the defendant to impeach Carl Hoffman on an immaterial issue. We have already stated our position concerning the closing statement. As to the point of surprise, it was the plaintiffs, upon request some seven months prior to trial, who authorized the defendant to see and copy all medical and hospital records pertaining to Carl Hoffman. Based upon this authorization, the defendant was able to secure the data which revealed the prior injuries. We fail to see how the plaintiffs can claim surprise when they themselves not only had the information available but were the actual source of the same.

■■ The remaining question is whether this evidence of prior injuries was material. Carl Hoffman testified that he had never suffered any of the symptoms complained of until after this accident. The expert medical testimony adduced by plaintiff tended to show that the symptoms were caused by this accident. This without doubt put into issue the physical well-being of Carl Hoffman, as did the defendant's answer denying that any injuries had been sustained. Since the plaintiff attributed his ailments to the injuries received in this accident, the defendant had the right to cross-examine him as to matters occurring before this accident which might have caused or contributed to cause the suffering of which he complained. Chicago City Ry. Co. v. Canevin, 72 Ill App 81. The defendant laid his foundation for impeachment during cross-examination, and later, during his part of the case, offered Dr. Murphy as his impeaching witness. This is in accordance with the rule laid down in Gordon v. Checker Taxi Co., 334 Ill App 313, 79 NE2d 632.

See also Caley v. Manicke, 29 Ill App2d 323, 173 NE2d 209, reversed on other grounds 24 Ill2d 390, 182 NE2d 206, and Collister v. Allen E. Kroblin, Inc., 30 Ill App 2d 288, 174 NE2d 911.

██ During the hearing on the motion for a new trial, plaintiffs for the first time raised the point that the evidence relating to prior injuries amounted to an affirmative defense and should have been pleaded in accordance with Section 43(4) of the Civil Practice Act. While it may be true that in a proper case, the claim that an injury was caused by a prior accident is an affirmative defense, Marut v. Costello, 53 Ill App2d 340, 202 NE2d 853, still, we cannot go so far as to hold that whenever evidence of a prior injury is brought to light by the defense it must of necessity be done as an affirmative matter. In the Marut case, there was no denial of prior injuries, but on the contrary, the plaintiff in that case alluded to a previous fall in her direct examination. Nevertheless, counsel for the defense continued to imply by his questioning that it was the prior injury which caused her complaints and not the accident in question. There was no impeachment to be considered in that case as there is in the case before us. We are of the opinion, in the case at bar, that the inquiry into the prior injury and physical condition of Carl Hoffman was not an affirmative matter that had to be pleaded and that such inquiry did concern a material issue in this case.

██ It is next contended that the court erred in giving defendant's instruction No. 8 over objection. The instruction and objection thereto are as follows:

"The court instructs the jury that you should not consider the questions of damages in this case until you have first determined whether or not the defendant is liable for the loss and damage claimed by the plaintiffs, or any of them, and if you find from the evidence and under the instructions of the

404

court that the defendant is not liable to the plaintiffs, or any of them, then you have no occasion at all to consider the question of damages. The fact that the court has given you instructions on the subject of plaintiffs' damages, if any, or that defendant's counsel has discussed such subject is not to be taken by you as any intimation on the part of the court or any admission on the part of the defendant that the defendant is liable for the loss or damage complained of by the plaintiffs."

"Mr. Nichols: I object to Defendant's Exhibit (sic) 8, the instruction was taken from a case that was decided before the adoption of IPI. IPI instructions on damages are complete in and of themselves. They have the 'if any' provision in them, there is no need of any more (sic) of the instructions because as pointed out in the words of IPI the 'if any' provision is adequately taken care of, it need not be emphasized. This is all that is necessary, this instruction does not instruct them except as to that particular part of my instruction No. 8."

Plaintiffs' instruction No. 8 was IPI No. 30.01, which set forth the elements of damages if the jury decided for the plaintiffs on the question of liability. Conversely, defendant's instruction tells the jury not to consider damages until they first determine that the defendant is liable. The committee that prepared IPI was generally opposed to negative instructions, that is, instructions which tell the jury not to do something. IPI p XV. This is one of those instructions. However, it is also a statement of the law. While we agree with the general policy of the committee as far as negative instructions are concerned, still we feel the defendant is entitled to have the jury instructed on this point. While the instruction could have been

405

shorter and more concise, still, we do not see how plaintiffs could have been prejudiced by the instruction as given. We hold, therefore, that it was not error to give the instruction.

After three hours of deliberation, the jury informed the court, through Mr. Huffman, the circuit clerk, that it was deadlocked. The trial judge then, for the record, stated as follows:

"Mr. Huffman called me after I had gone home about five-thirty and told me that the foreman had reported to him they couldn't agree on a verdict, they were hopelessly deadlocked. I came down and called the jury in and asked the foreman, whoever he was, what their position was on the case at the moment; and he said he thought they could never agree. I said that they had only been out a relatively short time and I said, go back and see what they can do between now and dinner time. If you can't agree, go to dinner, come back and try again, then if you tell me you can't agree I will discharge you."

"They went back out; I went home. I just had taken my coat and hat off and Mr. Huffman called me and told me the jury had agreed, then I came down again and they said, yes, they had agreed. They brought in the verdict and I discharged them."

"Mr. Huffman, does that sound right to you?"

"Mr. Huffman: That is all you said to them. 'Go back and take another vote before you go to dinner, if you don't agree, go to dinner and come back and try again; if you don't agree, I will discharge you.' "

Counsel for the plaintiffs argue that IPI No. 1.05, recommended for deadlocked juries, should have been

used and that the remarks of the court "may have had a coercive effect." Counsel does not set forth just how the trial judge's remarks might have coerced the jury, and, since he did not speculate, we surely are in no position to do so. It is a better practice for the trial courts to use IPI suggested instructions whenever possible; however, in this case we cannot see where the remarks of the court were prejudicial to the plaintiffs.

■■■■■ Lastly, it is argued that the verdict of the jury is manifestly against the weight of the evidence. A court of review in passing upon this contention must take into consideration the verdict of the jury; the fact that the trial judge, who saw and heard the witnesses as well as arguments of counsel, denied the motion for a new trial, Mokrzycki v. Olson Rug Co., 28 Ill App2d 117, 170 NE2d 635; that an opposite conclusion must be clearly evident, Benkowsky v. Chicago Transit Authority, 28 Ill App2d 257, 171 NE2d 416; and that merely because the jury could have found differently or that the judges feel other conclusions would be more reasonable is not sufficient. Kahn v. James Burton Co., 5 Ill2d 614, 126 NE2d 836. A review of the record before us in this case does not lead us to the conclusion urged by the plaintiffs.

Judgment affirmed.

ABRAHAMSON, P. J. and DAVIS, J., concur.