JOHN L. JAMISON, Plaintiff-Appellee, *v.* JOHN B. LAMBKE *et al.*, Defendants-Appellants.

(No. 59138; ■■■■■■■■

First District (5th Division)—July 26, 1974.

Thomas R. Phillips, L. Bow Pritchett, and Edward Butts, all of Chicago, for appellants.

Joseph A. Rosin, of Chicago, for appellee.

Mr. JUSTICE BARRETT delivered the opinion of the court:

Plaintiff commenced this action in the circuit court of Cook County to recover damages for injuries allegedly sustained on June 21, 1967, when he was struck as a pedestrian by an automobile driven by defendant Lambke. At the time of the accident, Lambke was working in the course of his employment for defendant Illinois Bell Telephone Company and was driving a company-owned car. After a jury trial, a verdict was returned in favor of plaintiff for $100,000. The jury also answered a special interrogatory consistent with the general verdict. The court entered judgment on the verdict from which this appeal is taken.

The accident occurred on Washington Boulevard within Garfield Park in Chicago.

Washington Boulevard passes through Garfield Park in an east-west direction. At the west edge of the park, it intersects with Hamlin Avenue (3800 West). This intersection is controlled by traffic lights. Proceeding east from Hamlin Avenue, Washington Boulevard makes a shallow "S" curve. It then straightens out as it approaches a pedestrian crosswalk. The crosswalk is 30 feet wide and marked by two white lines. Washington Boulevard is 50 feet wide at the crosswalk, with two traffic lanes both east and west.

The accident occurred slightly after 2:00 P.M. At the time, the weather was drizzling rain but visibility was fair. Even though Washington Boulevard curved slightly in an "S" fashion, a pedestrian standing on the curb at the south side of the crosswalk could observe the intersection of Washington and Hamlin approximately 534 feet away.

At the time of the accident, plaintiff was taking his 11-year-old son for a school medical check-up in a park building located in Garfield Park on the north side of Washington Boulevard. Plaintiff and his son walked through the park traveling north toward Washington Boulevard. Plaintiff walked a short distance ahead of his son.

Plaintiff testified that as he approached Washington Boulevard he stopped at the south curb at approximately the middle of the crosswalk. He looked to the left (west) and he could see all the way to the intersection of Hamlin and Washington. He observed that the traffic light was red for traffic on Washington Boulevard and that traffic was stopped. He observed no moving vehicles on Washington Boulevard between Hamlin and the crosswalk. Looking to his right, plaintiff could see that the traffic light was also red for traffic on Washington Boulevard at its

intersection with Central Park (3600 West). Plaintiff observed no moving traffic.

Plaintiff further testified that after looking both ways, he stepped off the curb and started to walk across the street in the middle of the crosswalk. When he was half-way across the outer eastbound or curb lane, he looked back over his right shoulder toward his son who was standing on the curb. Plaintiff told his son to come on before the traffic started. Plaintiff then continued to walk while looking back over his shoulder.

After looking back to his son, plaintiff again looked to his left and observed that there still were no eastbound vehicles. He continued to walk across the street. As he reached the white line separating the two eastbound lanes, he again looked back to see if his son were coming. By then his son had stepped off the curb.

When he was approximately 3 feet into the second or inner eastbound lane, plaintiff looked to his left for the third time. For the first time, plaintiff observed defendant's vehicle traveling east in the inner lane. The vehicle was 20 to 25 feet away. Plaintiff stopped and "just froze." The vehicle was too close for him to do anything. "I threw up my hands and froze."

Plaintiff then testified that he was struck and thrown up onto the hood of the car. He felt himself hit the windshield. At the time he was struck, he was near the middle of the 30-foot crosswalk. When he came to rest after the impact, he was lying in the street at least 15 feet east of the east edge of the crosswalk.

Romel Jamison testified for plaintiff that he and his father came up to the south curb near the middle of the crosswalk. His father looked both ways, stepped off the curb, took about two paces, turned around, and told Romel to come on. Before Romel started to follow, he looked for oncoming vehicles and noticed nothing. By the time plaintiff reached the second lane, Romel was about in the middle of the first lane. At this point, Romel saw defendant's vehicle about 20 feet west of the crosswalk. He then saw plaintiff throw up his hands prior to being struck by the oncoming vehicle.

At the time of the accident, defendant Lambke worked as a communications consultant for Illinois Bell Telephone Company, and was driving a company-owned Ford Falcon. He was on his way to make a customer call and was driving east on Washington Boulevard in the inside lane closest to the center line.

Lambke testified that his speed was 20 to 25 miles per hour. As he came around the curve going into the straightaway before the crosswalk, he noticed plaintiff and his son approaching the curb of Washing-

ton Boulevard. The boy was a little behind and to the west of plaintiff. They were about 10 feet away from the curb. As defendant proceeded eastward, he noticed plaintiff come up to the curb. As defendant continued to approach the crosswalk, he observed plaintiff look to his right and dart into the street in a northeasterly direction and east of the crosswalk. Defendant testified that he sounded his horn, applied his brakes and attempted to swerve to the left. Contact was made with plaintiff and the extreme right-hand portion of the car just as the car came to a stop. The vehicle did not move at all after impact.

Mr. Willard A. Alroth, a consulting traffic engineer, testified as a rebuttal witness for plaintiff. He stated that a vehicle traveling 25 miles per hour moves approximately 37 feet per second; a vehicle traveling 20 miles per hour moves approximately 29 feet per second. Over objection, Alroth testified that the approximate braking distance of a vehicle traveling 25 miles per hour under the conditions extant during the accident would be 25 to 50 feet. At 20 miles per hour, the approximate braking distance would be 17 to 35 feet.

Further testimony indicated that as a result of the accident, plaintiff incurred severe back injuries. At the time of the trial in December, 1972, plaintiff was still under care as an outpatient, and he continued to complain of pain in his back and left leg. He had not been able to work since February, 1972.

OPINION

The first issue raised by defendants on appeal is whether the verdict and the finding of the special interrogatory were against the manifest weight of the evidence. Specifically, defendants allege that plaintiff committed contributory negligence as a matter of law.

Relying on *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504, defendants contend that the evidence, when viewed in its aspect most favorable to plaintiff, so overwhelmingly favors defendants that the verdict for plaintiff based on that evidence cannot stand. Defendants base their contention on the fact that plaintiff testified he could see all the way to Hamlin Avenue, 588 feet away, and yet he did not see defendant's vehicle until he had walked at least 15 feet into the street and the vehicle was only 25 feet away. We disagree.

■■ A situation similar to the case at bar was presented in *Moran v. Gatz*, 390 Ill. 478, 62 N.E.2d 443. In that case, the plaintiff was crossing the street at a crosswalk and testified that she did not see the defendant's car before the impact even though she looked both before and after entering the crosswalk in the direction of defendant's car. A verdict was returned for the plaintiff. The Illinois Supreme Court reversed an adverse ruling of the appellate court and held, at page 486, that:

"a pedestrian's failure to keep a constant lookout, or to look again after having determined that he can safely cross ahead of approaching traffic, is not contributory negligence as a matter of law but it is a question for a jury whether he was in the exercise of ordinary care for his own safety."

Testimony showed that Lambke did not see plaintiff until he was 100 feet or less to the west of the crosswalk after coming out of the curve. From this testimony, the jury could plausibly infer that because of the curve in the street, plaintiff, having looked in a westerly direction, did not see defendant's car. It is logical and plausible, therefore, that plaintiff looked to his left, as he testified, and did not see defendant's car at the time he stepped into the street, or during the time he was in the outermost lane of traffic.

■■ In light of the fact that the law does not compel a pedestrian to constantly stare in the direction of oncoming traffic, we uphold the jury finding that plaintiff exercised due care and caution for his own safety. Although the issues in this case were seriously controverted, and the case itself was very close on the facts, we cannot reserve the jury finding that defendants were negligent. Lambke had a clear field of vision, could readily see plaintiff and had a duty to yield the right-of-way. We hold that there was ample evidence to support the finding that Lambke was negligent for failing to keep a proper lookout or for failing to yield the right-of-way to plaintiff.

The next issue raised on appeal is whether the trial court erred in giving plaintiff's issue instruction. Defendants raise two objections to the issue instruction: first, that it places undue emphasis on a disputed question of fact and secondly, that it incorporates disputed questions of fact and thus would tend to cause the jury to assume as a fact one of the hotly disputed issues in the case. Defendants specifically objected to the inclusion in the charge of the phrase "who was then and there a pedestrian crossing Washington Boulevard in a marked crosswalk." Defendants argue that this instruction placed undue emphasis on plaintiff's alleged position in the street and caused the jury to assume as a fact one of the most disputed issues in the case, *i.e.*, whether or not plaintiff was in the crosswalk.

■■ The instruction under examination is an issue instruction and is intended to set out plaintiff's claim. Plaintiff had the right to incorporate contested questions of fact into its issue instruction. The issue instruction should rightfully incorporate all matters of plaintiff's claim supported by the evidence. (*Rose v. B. L. Cartage Co.*, 110 Ill.App.2d 260, 249 N.E.2d 199.) The issue instruction included an aspect of plaintiff's

claim which was supported by the evidence and was therefore properly submitted to the jury. Plaintiff's testimony placed the point of impact in the crosswalk and defendant's testimony placed the point of impact outside the crosswalk. The jury was instructed on the rights and duties of pedestrians and motorists within and without a marked crosswalk. Based on the verdict, the jury obviously believed the testimony of the plaintiff. This was their right.

■■ Defendants next allege that the trial court erred in allowing plaintiff's expert to state an opinion on braking distances. Defendants argue that the expert testimony constituted reconstruction testimony, which was an inadmissible substitute for available eyewitness testimony. (*Plank v. Holman*, 46 Ill.2d 465, 264 N.E.2d 12.) We cannot agree.

The witness, Mr. Alroth, testified to two facts, each of which was properly received in evidence. First he testified that a car traveling at defendant's stated speed of 25 m.p.h. would travel approximately 37½ feet per second. Next, he stated that the minimum braking distance of an automobile traveling 20 to 25 m.p.h. was 25 feet. This testimony was relevant and properly admitted to assist the jury in determining factual issues. The trial judge is allowed a wide area of discretion in permitting expert testimony which would aid triers of fact in their understanding of the issues even though they might have a general knowledge of the subject matter. (*Stanley v. Board of Education*, 9 Ill.App.3d 963, 293 N.E.2d 417.) We hold that the trial court did not abuse its discretion and properly admitted testimony of plaintiff's expert witness.

Defendants next argue that the trial court committed reversible error in its rulings on objections to the medical testimony. Specifically, defendants objected to the hypothetical question posed to Dr. Reisman, who testified prior to any testimony as to the occurrence facts, or testimony of the initial treating physician. Defendants argue that the hypothetical question was based on facts not in evidence and that the question misstated facts concerning plaintiff's medical case. The trial court reserved its ruling on the defendants' objection and did not overrule the objection until all of the testimony was completed. Defendants also objected to the testimony of Dr. Moczynski on the ground that the hypothetical question put to the doctor contained facts not yet in evidence. Defendants also objected to the testimony of Dr. Malayter and Dr. Robert C. Busch, although when those doctors were called the plaintiff had testified as to the occurrence. The record is not clear, but assuming that the trial judge reserved his ruling on objections to all medical hypothetical questions, he did not overrule the objections until all of the testimony was completed. It therefore must be assumed that the

court was satisfied that in considering all of the evidence the hypothetical questions as put to the several doctors and the answers thereto were proper.

■■ We recognize that permitting an expert witness to answer hypothetical questions based upon facts which have not been previously adduced in evidence, regardless of whether there is a guarantee that such facts will be subsequently adduced in evidence, is not desirable and is strongly to be discouraged. Whether or not such practice will be permitted in a particular situation is within the sound discretion of the court. (*Gibson v. Healy Bros.*, 109 Ill.App.2d 342, 248 N.E.2d 771.) By reserving its ruling on the objection to the hypothetical questions, and overruling the objections only after all of the evidence was in, the trial court obviously was satisfied that the manner in which the evidence was presented was not prejudicial to the defendant, and we accordingly hold that its failure to sustain defendants' objection was not an abuse of discretion and did not constitute error.

Five doctors testified as to the plaintiff's condition and rendered their opinion as to causal connection. All of the doctors (except Dr. Busch) at one time or another were treating doctors to plaintiff and had personally taken a history. On the record, we regard the evidence of causal connection overwhelmingly in favor of the plaintiff. Furthermore, the jury was instructed on the requirement of causal connection between the injury and the condition of ill-being of the plaintiff at the time of trial.

Finally, defendants argue that during closing argument plaintiff's counsel used "inflammatory, untrue, and misleading statements" which deprived defendants of a fair trial. We disagree.

■■ Plaintiff's closing argument consisted of a fair recitation of the evidence and reasonable assumptions to be drawn therefrom. (*Walsh v. Chicago Railways Co.*, 303 Ill. 339, 135 N.E. 709.) Defendants at no time raised any objection during plaintiff's closing argument and any error that may be assigned thereto was accordingly waived.

For the reasons stated herein, we believe that the issues in this case were primarily questions of fact and that the trial court properly submitted those questions to the jury under appropriate instructions. The judgment of the circuit court of Cook County is supported by the record and is therefore affirmed.

Judgment affirmed.

DRUCKER and LORENZ, JJ., concur.