ELEANOR WALCZAK et al., Plaintiffs-Appellees, v. GENERAL MOTORS CORPORATION, Defendant-Appellant.—(BARKMAN CHEVROLET SALES Co., INC., Defendant.)

(No. 12655; 

Fourth District—January 8, 1976.

Hutton, Laury & Hesser, of Danville, for appellant.

Dukes, O'Rourke, Stewart & Meyers, Ltd., of Danville (C. W. Dukes and John P. O'Rourke, of counsel), for appellees.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Three plaintiffs were injured in a single-car accident in March 1970 on Interstate Highway 74 between Danville and Champaign, Illinois. Plaintiffs brought an action against General Motors Corporation, the manufacturer of the car, and Barkman Chevrolet Sales Co., Inc., the selling dealer, upon the theory of products liability. The jury returned a verdict for the plaintiffs against General Motors and a verdict for Barkman and against the plaintiffs. Judgment was entered upon the verdicts from which General Motors appeals.

Upon this appeal, General Motors asserts that the judgment for dam-

ages against it should be reversed because of the erroneous admission of prejudicial testimony of plaintiffs' expert economic witness; that the trial court erred in admitting into evidence the testimony of certain declarations made by the plaintiffs to one another; that there was error in the admission of plaintiffs' expert witness testimony with reference to defects in the car; and, finally, that the verdicts against General Motors and in favor of Barkman are inconsistent.

On the date in question, plaintiff Dennis Selsor, who was then 21 years of age, was driving a 1970 Chevrolet Chevelle supersport automobile upon Interstate Highway 74. The new car had been purchased by Roberta Selsor and her mother Eleanor Walczak from Barkman Chevrolet on January 30, 1970. They were passengers in the car being driven by the plaintiff Dennis Selsor. A few days prior to the accident, the car had been taken to Barkman for a 1000-mile checkup. At the time of the injury, the car had been driven some 1200 miles. The immediate facts surrounding the incident causing the injuries and property damage are not controverted. The plaintiffs were driving down the interstate highway under good weather conditions, no wind, dry pavement, and light traffic conditions. The car was steering properly and was being driven at about 60-65 mph. A short distance west of Danville, they came up behind a slower moving semi-trailer truck; Dennis proceeded to pass the truck by pulling from the right to the left lane of the four-lane divided interstate. After he had passed the truck, and was proceeding parallel with, but in front of, the truck, he attempted to steer the car back into the right-hand lane but he could not turn the wheel to the right. He tried to force the wheel to turn to the right but was unable to do so. The car veered off the road to the left and crashed in the median strip. All three plaintiffs were injured and they sued to recover for their injuries and for the property damage. No issue is presented by the pleadings. The three plaintiffs testified as to the occurrence and their injuries. In the course of their testimony, they were permitted to testify with reference to declarations that had been made in the car at the time the steering mechanism failed. The plaintiffs presented evidence from an experienced automobile mechanic who had made an examination of the automobile. They also presented testimony from an economics expert who discussed the future earnings capacity of the plaintiff Eleanor Walczak. Extensive medical testimony was presented with reference to the injuries. The jury returned a verdict for $175,000 for the personal injuries of Eleanor Walczak; $3000 each to Roberta Selsor and Dennis Selsor; and some $3700 to the owners for the property damage.

■■ Plaintiffs introduced an expert who testified as to the total future earning capacity of the plaintiff Eleanor Walczak. He calculated the

future loss of earnings, and testified with reference to wage returns and anticipated increases in wages. No express issue is made in this case by General Motors that the jury verdict for damages is excessive. In its post-trial motion, General Motors did expressly contend that the damages were excessive. Such issue was not argued and in the oral presentation of the grounds urged in the post-trial motion, excessive damages were not discussed. We take it to be well settled that alleged errors that relate solely to the question of damages will not warrant a reversal in the absence of any claim that the damages awarded are excessive. In *Slovinski v. Beasley*, 316 Ill.App. 273, 45 N.E.2d 42, it is stated:

> "It has been repeatedly held that evidence or instructions going to the measure of damages, where the amount is not questioned as excessive, will not work a reversal, because, errors therein, if any, are harmless. *Reisch v. People*, 130 Ill.App. 164, aff'd. 229 Ill. 574, 82 N.E. 321; *Semrau v. Calumet & S.C. Ry. Co.*, 185 Ill.App. 203; *Hutchison v. Chicago City Ry. Co.*, 192 Ill.App. 464." (316 Ill.App. 273, 276, 45 N.E.2d 42, 44.)

In *Sheley v. Guy*, 29 Ill.App.3d 361, 330 N.E.2d 567, we stated "evidence or instructions going to the measure of damages where the amount awarded is not questioned as excessive must be viewed as harmless error." 29 Ill.App.3d 361, 366, 330 N.E.2d 567, 571.

■■ Furthermore, in *Raines v. New York Central R.R. Co.*, 51 Ill.2d 428, 283 N.E.2d 230, our supreme court noted that if there is proper evidence sufficient to support the verdict, it is unnecessary to examine a defendant's contention that the admission of evidence regarding future inflation resulted in an excessive verdict. In *Raines*, the issue was whether the verdict was excessive. Here, there is no such express issue, and such issue is tendered at best by mere implication. Under *Raines*, there clearly is sufficient evidence in this record with reference to the nature and extent of Eleanor Walczak's injuries to support the verdict. Under *Raines*, it would not be necessary that we consider the contention that the evidence was improperly admitted.

■■ Over the objections of the defendants, two of the plaintiffs were permitted to testify as to spontaneous declarations made by one or two of the other plaintiffs in the car at the time the steering mechanism supposedly became locked. Roberta Selsor testified that she saw Dennis Selsor grab the steering wheel and that she heard her mother say, "Oh my God, Dennis, no." Roberta then testified that Dennis said, "It won't turn." Eleanor Walczak testified that she heard Dennis say, "Oh my God, Mom, it won't turn" or "It won't turn, Mom." General Motors contends that error was committed when these statements were admitted as spon-

taneous declarations or excited utterances as exceptions to the hearsay rule. General Motors further claims that the result of such admission was to arouse sympathy of the jury. General Motors further characterizes the objected-to testimony as inadmissible, self-serving statements. While it is conceded that the statements are spontaneous declarations or excited utterances, under the principles enunciated in *People v. Poland*, 22 Ill.2d 175, 174 N.E.2d 804, General Motors contends that such statement by a party to a coparty should be inadmissible. General Motors' reliance upon Gard, Illinois Evidence Manual, § 177, at 207 (1963), as authority for its position is, we believe, misplaced. Gard as cited states the rule to be that statements which are self-serving made personally by a party or through an agent are not admissible on behalf of the party unless they qualify under some other exception to the hearsay rule. In his comments, the author remarks that they are not admitted "unless they qualify as res gestae declarations." Spontaneous declarations or excited utterances, even if self-serving, are admissible if they otherwise meet the test of admissibility. (*Sullivan v. Heyer*, 300 Ill.App. 599, 21 N.E.2d 776.) The jury would obviously know of the plaintiffs' interest and indeed were instructed that they should consider any interest that any witness might have and were given the standard instruction to the effect that the jury is the sole judge of the credibility of the witnesses.

Plaintiffs produced Wilbert Messmer as a witness and this witness was allowed to testify with reference to possible design and manufacture defects in addition to testimony he gave with reference to his findings as a result of his examination of the automobile. We summarize here the qualifications of this witness found in the record:

> Wilbert Messmer is a 54-year-old automobile mechanic and garage proprietor from Pennsylvania. He has been an automobile mechanic for over 30 years. Although he did not attend high school, he attended Allegheny Vocational School for 3½ years, at which time he studied automobile mechanics. While in the Army he went to school for a time to learn the Army's method for the assembly and disassembly of motor vehicles, and he was a mechanic for the Army in the Philippine Islands. He has repaired all types of trucks and automobiles, and he was a state automobile inspector for a time in Pennsylvania. He reads numerous magazines and manuals dealing with automobiles. He designed and patented an airpump thrust valve. He has had mechanical experience with about 100 Chevrolet Chevelle automobiles. He has dealt with the steering mechanisms in about 200 automobiles of various kinds. He has observed the mounting arrangement of the steering mechanism in the 1970 Chevrolet Chevelle with particular reference to the

location of the flexible coupling in relation to the frame on at least 15 automobiles. He has observed the steering mechanisms on hundreds of other kinds of cars, including the flexible coupling arrangement. Since 1964, he has examined about 100 wrecked cars in cases in which mechanical failures or defects were suspected. He was a panel member at the Dickinson Law School in Pennsylvania in a seminar to instruct lawyers and technicians about defects in automobiles. He participated in a similar program at Carnegie-Mellon Institute in Pittsburgh. He has examined wrecked automobiles for defects in the states of Pennsylvania, Ohio, Illinois, West Virginia, Virginia, Kentucky, and Georgia. He has examined the 1970 Chevrolet Chevelle owned by the Walczaks after the accident involved in the present case. He saw the car three times, and he examined the gear box four times. His procedure is to examine the entire automobile, and his examination of the Walczak car took between 4½ and 5 hours.

Upon cross-examination, Mr. Messmer admitted that he had had no academic training in the field of metallurgy. He also admitted that he had never before seen the kind of rubbing that appeared in the steering mechanism on the Walczak vehicle and that he had made no scientific tests to determine the effect of such rubbing.

This witness testified extensively *prior to any objection* except a general objection as to relevance. That testimony is summarized as follows:

He testified that there is much more clearance for the flexible coupling on the steering mechanism on other vehicles than on the 1970 Chevelle. There is no objection from the defense as to any of the further testimony until so indicated. Messmer testified that in examining the steering mechanism of the Walczak vehicle, he observed that the flexible coupling was binding on the frame on right hand turns, but not on left hand turns. He testified that his procedure is to check the entire vehicle. "The reason for that is I like to make a thorough examination of all parts of the automobile. Sometimes an automobile involved in an accident, there are other difficulties in the automobile besides whatever the complaint has been. I like to be sure when I examine it I check everything. I make a thorough examination on everything, throttle, linkage, drive shaft, differential, brake system on the car, want to make sure if there was any malfunction at the time of the accident, or after the accident." He testified that he had found shiny spots on the bolts and nuts on the steering mechanism, that the shiny spots were the result of wear, and that there was also a buildup of them. He said that he had found gouge marks and a

buildup of metal on the frame where the nut from the steering mechanism had been rubbing against the frame on a right turn. He explained why the binding effect would occur on a right turn but not on a left turn. The reason was that the flexible coupling of the steering mechanism would move up and rotate slightly to lock in place on a right turn. He stated that there was no internal problem in the steering gear box itself. This gear box or flexible coupling was hitting against the frame when turned to the right in two places. Those two places were the safety pin and the hexagon nuts. On a turn to the right, the coupling would move slightly upward and in this process it would nick and burr against the frame, causing a buildup of small pieces of metal. This buildup then causes the steering mechanism to lock on a right hand turn. He testified that according to the plans and specifications of the General Motors Company, the steering gear box was as close as .33 inch away from the frame at one point, and .38 inch away at another point. He made a template measurement of the distance between the flexible coupling and the frame to be compared with the measurements from the plans of the General Motors diagram. His template measurement pointed out that one lug hole was slightly off its prescribed location and that this would affect the distance between the gear box and the frame in turning the car in one direction. He testified regarding the manufacture of the frame by means of a dye and press to make a contoured pocket in which the gear box would fit. He said that if this manufacture were inaccurately done, the gear box would be closer to the frame than was specified in the blueprints. He discussed the amount of force used in the dye and press to stamp the frame, and he pointed out the effect of too little pressure. He also pointed out that if any foreign particles were present in the dye and press, the stamping process would not form a deep enough pocket in which the gear box would fit. He testified that the torque factor involved in tightening the nuts of the gear box and the frame. *No objections were raised by the defendants to the preceding testimony.*

After all of the foregoing testimony was received, as we note, without objections or specific objection, the witness was asked if he had an opinion, based upon mechanical and scientific certainty, whether the condition described existed before the accident. Objection was made to this question; the court heard extensive argument of counsel, and the court concluded to permit the witness to express an opinion. The court observed that the witness had testified as to his 30 years of experience as a mechanic and his experience working with metals. The court noted that the witness

would have the required experience to express an opinion upon the question posed to him. The weight of his opinion was a question for the jury to decide. No motion was made to strike any of the previous testimony of the witness Messmer.

■■ Messmer then continued to testify as to his opinion about various matters, over repeated objections from the defendant. He testified that the rubbing as described had occurred before the accident; that the rubbing action resulted from the closeness of the steering gear to the frame, and that this condition had existed from the time the car left the factory. He further testified that the closeness of the steering gear to the frame would cause a buildup of metal from the rubbing against the frame and would cause the steering mechanism to bind and to lock into position so that the wheel could not turn in one direction. He expressed an opinion as to the dangerous condition of the automobile by reason of this gear box location and expressed the opinion that the car should have been designed with a greater clearance. We find no error in the trial court's permitting the testimony of the witness Messmer.

■■ Much of the testimony with reference to his examinations of the automobile was admitted without objection. The trial court has wide discretion in passing upon the qualifications of an expert. In *People v. Jennings*, 252 Ill. 534, 96 N.E. 1077, it is stated that an expert need only possess special skill or knowledge beyond that of the average layman in order to render an opinion. Whether that opinion will be permitted based upon the shown qualifications is a matter that rests within the sound discretion of the trial court. We cannot say upon this record that the trial court abused its discretion in permitting the testimony. Clearly, the weight to be attached to the given opinion is a question for the jury in the light of the expert's credentials, the facts upon which he bases his opinion and any limitations placed thereon during cross-examination. See *Buckler v. Sinclair Refining Co.*, 68 Ill.App.2d 283, 216 N.E.2d 14.

■■ Furthermore, we deal here with an automobile that had been driven only 1200 miles and the evidence is that nothing had been done to the steering mechanism from the date of delivery to the date of the accident. In *Tweedy v. Wright Ford Sales*, 31 Ill.App.3d 72, 334 N.E.2d 417, we noted the decisions with reference to the need for proof of a specific defect and there concluded that a specific identifiable defect was not absolutely essential to proof of liability in a products liability case. In this case, as in *Tweedy*, the evidence establishes that the injury resulted from a condition of the product, that the condition was unreasonably dangerous, and the evidence clearly supports the jury's conclusion that the condition of the product existed when the product left the manufacturer's control. Under such circumstances, the malfunction makes

it lacking in fitness for its intended use. It is defective without reference to evidence establishing a specific identifiable defect other than the fact of the malfunction.

■■ The brief of General Motors, as noted, contends that the verdict against the manufacturer but in favor of the retailer is inconsistent and cannot stand. This point was expressly waived by General Motors at the time of oral argument in response to questions by the court relative to tendered instructions by General Motors which contemplated a finding of damages against one or both of the named defendants.

We find no reversible error in this record. The judgment is affirmed.

Judgment affirmed.

TRAPP, P. J., and SIMKINS, J., concur.