HENRY VANDERMYDE, Plaintiff-Appellee, *v.* THE CHICAGO TRANSIT AUTHORITY *et al.*, Defendants-Appellants.

First District (5th Division)    No. 78-145

Opinion filed May 18, 1979.—Supplemental opinion filed on denial of rehearing August 3, 1979.

Edward J. Egan, of Chicago Transit Authority, and John J. O'Toole and Richard T. Ryan, all of Chicago, for appellants.

William D. Maddux, of Maddux, Johnson & Cusack, Ltd., of Chicago (Thomas H. Fegan, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff brought this action against defendants, Chicago Transit Authority (CTA) and Joseph Kelso, a CTA driver, for damages from injuries sustained in a rear-end collision in which a bus driven by Kelso struck a car which in turn hit the truck driven by plaintiff. A jury returned a verdict of $100,000 in favor of plaintiff and judgment was entered on the verdict. Following denial of their post-trial motion, defendants appealed, contending that: (1) the opinion testimony of plaintiff's expert witness was based on an improper and misleading hypothetical; (2) the trial court improperly restricted defendants' inquiry into plaintiff's prior back condition; (3) plaintiff was impeached; and (4) the jury instructions were improper in that they were lengthy and repetitious with regard to liability and damages. We reverse and remand. The pertinent facts follow.

Plaintiff first called defendant Kelso as an adverse witness under section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1975, ch. 110, par. 60.) Kelso, a bus driver for the CTA for 14 years, was operating a bus northbound on Ashland Avenue on May 4, 1972, the day of the collision. Traffic was bumper to bumper, moving at what Kelso estimated to be about 10 to 12 miles per hour in a stop-and-go fashion. Kelso's bus was in the middle lane of three lanes, about 10 feet behind the car in front of him, and there was a truck ahead of the car. The bus was moving approximately 10 miles per hour when the truck and the car stopped suddenly. Although Kelso put his foot on the brake, the bus collided with the car, which was pushed into the rear of the truck. Kelso said he was going less than one mile per hour at the time of the impact. Plaintiff, who was driving the truck, had said that he was all right after the accident.

Dr. Allan Hirschtick, an orthopedic surgeon, was called as an expert witness. He had examined plaintiff twice, once on September 2, 1975, when he performed an orthopedic examination, and again on May 25, 1976. He found a loss in the range of both extension and rotation of plaintiff's head and neck and there was some impairment of sensation in the right hand. There was also a loss of extension of plaintiff's lower spine and a test of his ability to raise his legs indicated some trouble in the lumbo-sacral area of the lower back. Dr. Hirschtick took several X rays which disclosed that there had been a permanent fusion of the sixth and seventh cervical vertebrae by bone graft. The X rays did not show any problem with the bones or joints in the lower spine. Dr. Hirschtick

concluded that plaintiff had two problems with his back. The first was a herniated intervertebral disc which had been treated by surgical fusion of the sixth and seventh cervical vertebrae. The other problem could be diagnosed as a lumbar disc syndrome, although the lower lumbar disc was not visible in the X rays.

A hypothetical question was posed over defendants' objection and subject to being connected up with evidence yet to be produced. Dr. Hirschtick believed there was a causal relationship between the accident of May 4, 1972, and the condition described in the hypothetical question which included the findings of his examination of plaintiff. He also stated that it was not unusual for the hypothetical man not to see a physician until August with a severe complaint, because an injury to an intervertebral disc causes gradual deterioration and increasing discomfort.

On cross-examination, Dr. Hirschtick testified that the condition of the hypothetical man's neck and spine before the date of the accident was significant and that he based his opinion on the facts that there was no prior history of neck or back problems and that the patient complained of injury to his neck and back after the accident.

Plaintiff testified that he was a truck driver on the date of the accident and was driving a 16-foot refrigerated truck. His work included loading the truck and making deliveries of cartons weighing from 30 to 75 pounds. He was a member of a union, making $5.31 an hour. He described the traffic in the same manner as did Kelso and stated that he was not aware that there was going to be an accident until he felt the impact and the jolt of his truck. He was thrown backwards into the back of the inside of the cab, which was a few inches behind the back of his seat, which had no headrest. He got out of the truck and walked to the rear of the truck where he saw the bus and the car. After leaving the scene of the accident he returned to the warehouse, parked his truck and obtained accident reports. His left leg was scraped and he had a slight kink and soreness in his neck. He took aspirin and continued to work, but the pain got progressively worse, his arm was becoming increasingly numb and he could do no lifting whatsoever. He first sought medical treatment on August 8, 1972, when he saw one Dr. Vanderbilt who ordered X rays and referred him to Dr. Eli Tobias.

Plaintiff was hospitalized and put in traction. After additional tests, he underwent surgery on his neck. He wore a neck brace when he was released from the hospital, wearing it from about three days after the surgery until February 5, 1973. He didn't work between August and February and had difficulty working when he returned, with continued numbness in his right hand. He worked until August 9, 1974, when his plant closed. He was unable to get further work as a truck driver, then

worked as an industrial tank cleaner and a short order cook at marked reductions in wages. He had visited an osteopath and a chiropractor because of the pain in his neck and numbness on his right side. He added that he still had numbness and a constant ache down his side and that he was unable to do heavy lifting or participate in sports activities.

On cross-examination, plaintiff testified that he had filled out accident reports for his employer the day after the accident, although the date on the report was August 25, 1972.

Dr. Eli Tobias, a neurosurgeon and plaintiff's treating physician, testified that his initial examination of plaintiff included taking a history of his condition, in which plaintiff related his involvement in the accident in May and that since that time he had been complaining of aches and pains radiating into the shoulder blades, with severe episodes of pain in the neck. Upon conducting a neurological examination of plaintiff, Dr. Tobias found that extending plaintiff's head to the right caused sharp pains to radiate into the shoulder, arm and hand. Further examination disclosed tenderness in the cervical spine and weakness in the elbow.

Dr. Tobias followed a conservative course of treatment which included hospitalization and physical therapy, and only performed surgery after additional tests showed that plaintiff was not improving. Dr. Tobias believed that the accident did have a causal relationship to plaintiff's condition, stating that the kink in plaintiff's neck could gradually become aggravated through additional irritation of the nerve and slippage of the disc caused by plaintiff's moving his neck. While the fusion of the vertebrae was permanent, Dr. Tobias could not say if plaintiff's overall condition was permanent.

On cross-examination, Dr. Tobias testified that he did not recall ever treating plaintiff for the lumbar area of his back. Plaintiff had not complained of any pain in his lower back either when he was giving Dr. Tobias his history or while he was hospitalized. He examined plaintiff on October 26, 1972, at which time he found plaintiff to be doing very well and told him that he need not wear the brace constantly, but that he could wear it to support his neck when necessary. The next time Dr. Tobias saw plaintiff was in January 1973, although he had received a call from plaintiff or his wife on November 20, 1972, in which he was told that plaintiff had fallen down some stairs and that his neck hurt. In the January visit, Dr. Tobias noted that plaintiff's right arm was doing well, but that plaintiff complained of numbness on his left side, which he had begun to notice after he fell down the stairs. Dr. Tobias' record of the January visit contained the first reference to any complaint relative to plaintiff's back. Dr. Tobias saw plaintiff again in March 1973 at which time plaintiff complained of pain in his back and numbness to his left arm. There was

no complaint of any pain in plaintiff's neck at that time and Dr. Tobias had not treated plaintiff since then.

On redirect examination Dr. Tobias stated that plaintiff's fall occurred toward the end of the recovery period and that a fall down stairs is more likely to cause injury after recent surgery. He also stated that a neck brace keeps the neck in one position and inhibits one's ability to look down at differences in levels. Dr. Tobias testified further on re-cross-examination, saying that plaintiff's neck brace would have been removed from constant wear in late October.

At the close of plaintiff's case, defendants' motion to strike Dr. Hirschtick's testimony was renewed and denied.

Defendants called plaintiff as a witness under section 60 of the Civil Practice Act. Plaintiff admitted that he had signed and completed the accident report for his employer but that he did not fill in the date. He also testified that he had pulled a back muscle while working for a previous employer in 1967 and that he had visited the company doctor who treated him and sent him back to work. The testimony of the prior back problem was allowed over plaintiff's objection, subject to being supported by competent evidence. The employer's accident report was admitted into evidence by plaintiff over defendants' objection. Defendants then called a witness in an effort to bring in plaintiff's employment records regarding the 1967 back problem, but plaintiff's objection was sustained, the evidence was not allowed and plaintiff's testimony as to the prior injury was stricken.

Plaintiff testified in rebuttal that he was wearing the neck brace when he fell. He described the stairway as carpeted, with two steps leading from the kitchen to a landing from which the stairs turn and lead directly to the basement. There are aluminum strips over the carpeting at the edge of each stair. Plaintiff had tripped on the aluminum stripping as he came out of the kitchen, reached around to regain his balance, and fell the two steps to the landing.

No other evidence was presented, although plaintiff requested that he be allowed to testify again in rebuttal. The jury returned a verdict of $100,000 for the plaintiff and judgment was entered on the verdict. Defendants' post-trial motion was denied and they have appealed.

Opinion

It should first be noted that defendants have neither challenged the verdict as being against the manifest weight of the evidence, nor claimed that the amount of damages is excessive, maintaining instead that error with regard to certain evidentiary matters and instructions to the jury caused the jury to assess damages improperly. The scope of this review is

accordingly limited to an examination of whether the errors claimed have operated to the prejudice of defendants. (*Wozniak v. Segal* (1975), 34 Ill. App. 3d 400, 339 N.E.2d 309; *Hann v. Milla* (1968), 95 Ill. App. 2d 447, 237 N.E.2d 753.) We hold that they have.

Defendants first contend that the opinion of Dr. Hirschtick, plaintiff's expert witness, was based on an improper and misleading hypothetical. Dr. Hirschtick testified that he based his opinion on two significant factors, the absence of any history of previous back trouble and the presence of a complaint of pain in the back following the collision. Defendants contend that neither of these elements is supported by the record.

■■ Defendants point out that Dr. Hirschtick was called to testify before any testimony regarding plaintiff's injury had been heard. Defendants objected to Dr. Hirschtick's testifying out of order and again objected to the hypothetical question posed to him. The question was allowed on the condition that plaintiff would connect it up with evidence yet to be adduced. While the allowance of such testimony before other evidence is taken is not advisable, it lies within the sound discretion of the trial court. (*Hahn v. Eastern Illinois Office Equipment Co.* (4th Dist. 1976), 42 Ill. App. 3d 29, 355 N.E.2d 336; *Nowakowski v. Hoppe Tire Co.* (1976), 39 Ill. App. 3d 155, 349 N.E.2d 578; *Jamison v. Lambke* (1974), 21 Ill. App. 3d 629, 316 N.E.2d 93.) Thus, the calling of plaintiff's expert witness before there was evidence of plaintiff's injury was not of itself error.

In the hypothetical put to him, Dr. Hirschtick was asked to assume that there was no prior history of any problem relating to the back or neck. However, there was no evidence produced regarding the condition of plaintiff's neck and back before the date of the accident. Although defendants attempted to bring out evidence of a prior back injury during their section 60 examination of plaintiff, that testimony was stricken pursuant to plaintiff's motion. At no time did plaintiff's counsel inquire about the condition of plaintiff's back. The assumption of no prior injury was therefore not based on the evidence.

Dr. Hirschtick testified that he also based his opinion on the presence of both back and neck pain after the accident. We find that this part of his opinion is also unsupported by the record. The condition described in the hypothetical was one of severe pain in the neck which was ultimately treated by the surgical fusion of two cervical vertebrae, but there was no mention of a complaint of any pain or injury to the back. Plaintiff had never complained of any damage to his back after the collision. The first mention of lower back pain occurred during the cross-examination of plaintiff's treating physician, who testified that plaintiff or plaintiff's wife had called him in November 1972 to tell him that plaintiff had fallen down

some stairs and that his back hurt. Plaintiff visited his doctor in January 1973 and March 1973, at which time he complained only of the lower back pain. He was never treated for the lower back pain.

■■ ■ Plaintiff testified in rebuttal that he was wearing his neck brace when he fell, although his doctor had testified that he had told plaintiff in October 1972 that he need not wear the brace all the time. Although the fact that a later injury occurred in a different part of the body does not necessitate a conclusion that the second injury was not caused by the first, there must be evidence of a causal relationship. (*Stephenson v. Air Products & Chemicals, Inc.* (5th Dist. 1969), 114 Ill. App. 2d 124, 252 N.E.2d 366.) While evidence that plaintiff was wearing the neck brace when he fell down the two stairs leading from his kitchen may tend to show a connection between the first accident and the second, it did not free plaintiff from the burden of establishing that he was free from contributory negligence when the second accident occurred. (*Cf. Siebens v. Konicek* (2d Dist. 1969), 108 Ill. App. 2d 300, 247 N.E.2d 453.) This plaintiff did not do, and we consequently conclude that there was no evidence of a lower back injury on which Dr. Hirschtick could base his opinion.

■■■ We find that, under the circumstances of this case, the allowance of Dr. Hirschtick's expert opinion before other evidence was presented operated to prejudice defendants' case. The hypothetical question contained facts that were assumed, but the assumptions were unsupported by the evidence and the question was therefore improper. (*Guardian Electric Manufacturing Co. v. Industrial Com.* (1973), 53 Ill. 2d 530, 293 N.E.2d 590; *Rodriguez v. City of Chicago* (1974), 21 Ill. App. 3d 623, 316 N.E.2d 88.) By allowing the expert testimony to precede testimony of the extent of plaintiff's injury, the trial court in effect allowed plaintiff an opportunity to slant the case in his favor by presenting an opinion which was not based on the evidence and which was not subject to further cross-examination when evidence to the contrary was offered.

■■ Defendants also contend, and we agree, that it was error to restrict their inquiry into the previous condition of plaintiff's back. Defendants called plaintiff as a witness under section 60 and inquired about a previous back injury, which plaintiff admitted. However, plaintiff objected on the grounds that no medical testimony had been offered to connect the previous condition to the present one, and the testimony was stricken.

The prior condition of plaintiff's back was placed in issue because of plaintiff's assertion that his injuries were caused by the May 4, 1972, collision. The evidence presented by plaintiff tended to show that his problems resulted from that accident. The prior condition of plaintiff's back therefore was a proper subject for pursuit on cross-examination by

defendant and for later consideration by the jury. *Palsir v. McCorkle* (2d Dist. 1966), 70 Ill. App. 2d 425, 216 N.E.2d 682; *Hoffman v. Wilson* (2d Dist. 1965), 60 Ill. App. 2d 396, 208 N.E.2d 607.

Furthermore, contrary to plaintiff's contention, the absence of medical testimony alone does not prevent the admission of other evidence of a prior injury. In *Palsir v. McCorkle*, the plaintiff had complained of an injury to his entire right side and testified on cross-examination that he had had an earlier problem with his right flank, groin and both knees. Although no medical testimony was offered regarding the previous injury, the evidence was allowed because it had been supplied by the plaintiff himself and not by innuendo. (70 Ill. App. 2d 425, 432, 216 N.E.2d 682, 685.) When a prior injury is sought to be connected with a present injury, it must be connected by competent testimony. (*Marut v. Costello* (1964), 53 Ill. App. 2d 340, 202 N.E.2d 853, *aff'd* (1966), 34 Ill. 2d 125, 214 N.E.2d 768.) No case has held that the competent testimony may only be medical testimony, and the instances requiring additional evidence have involved an injury to another part of the body (*Marut v. Costello*), or plaintiff's denials of questions which implied the existence of another accident or related injury. *Simpson v. Johnson* (3d Dist. 1977), 45 Ill. App. 3d 789, 360 N.E.2d 144; *Caley v. Manicke* (2d Dist. 1961), 29 Ill. App. 2d 323, 173 N.E.2d 209, *reversed on other grounds* (1962), 24 Ill. 2d 390, 182 N.E.2d 206; *Gordon v. Checker Taxi Co.* (1948), 334 Ill. App. 313, 79 N.E.2d 632.

The testimony which was stricken was plaintiff's own admission of a prior problem with the same area of the back which plaintiff claimed was injured after the accident. While no medical evidence was necessary for that testimony to stand, any other competent evidence which tended to support defendants' position should have been allowed. It was therefore error for the trial court to restrict defendants' inquiry into the history of the condition of plaintiff's back.

In light of our conclusion that defendants' case was prejudiced by the trial court's rulings regarding the hypothetical question and the prior condition of plaintiff's back, we need not consider defendants' contention that plaintiff was impeached by his own witnesses and testimony. However, because this case must be remanded to the trial court for further action, we will consider defendants' claim that the jury was improperly instructed.

Defendants maintain that certain jury instructions were improper because they were repetitious and lengthy, thus lending undue weight to the issues of damages and liability. Plaintiff's instructions Nos. 10, 11 and 12 pertain to damages, instruction No. 10 containing the element of the aggravation of a pre-existing ailment or condition, when no evidence of such a condition was contained in the record. Instruction No. 11 was

repeated in its entirety in instruction No. 12. Plaintiff's instruction No. 9, although modified after defendants' objections, was given over defendants' continuing objection that it improperly stated the issue of proximate cause.

■■ Plaintiff's instructions Nos. 9, 10, 11 and 12, when examined in conjunction with the other errors claimed by defendants, served to compound the prejudice that resulted from those errors and were therefore improper. Defendants admitted liability at the oral argument and it is, therefore, not necessary to address their remaining objections to the jury instructions based on that issue.

■■ In conclusion, we find that the erroneous hypothetical, the restriction of evidence necessary to present defendants' theory of the case, and the instructions to the jury constituted errors which led to an improper assessment of the damages caused by the accident of May 4, 1972. We therefore hold that defendants are entitled to a new trial solely on the issue of damages. Accordingly, the judgment of the trial court is affirmed as to liability and reversed as to damages and the cause is remanded for a new trial, not inconsistent with this opinion, solely on the issue of damages.

Affirmed in part; reversed in part and remanded with directions.

SULLIVAN, P. J., and LORENZ, J., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff has asked us to reconsider our decision, contending that there is no basis for a partial reversal and remand for a new trial on the issue of damages because defendants have not claimed that the damages awarded at trial were excessive.

Plaintiff correctly points out that Illinois law has long held that errors which relate solely to the question of damages do not warrant a reversal absent a claim that they are excessive. (*Walczak v. General Motors Corp.* (1976), 34 Ill. App. 3d 773, 340 N.E.2d 684; *Sheley v. Guy* (1975), 29 Ill. App. 3d 361, 330 N.E.2d 567, *aff'd* (1976), 63 Ill. 2d 544, 348 N.E.2d 835.) However, a closer reading of the *Walczak* and *Sheley* cases, as well as the others cited by plaintiff, discloses that the principle applies in situations involving the dollar amount of the injury.

As was noted by this court in *Fugate v. Sears, Roebuck & Co.* (1973), 12 Ill. App. 3d 656, 669, 299 N.E.2d 108, 117-18:

> "Every tort action grounded in negligence requires the showing of (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, *i.e.*, a negligent act or omission, which (3) proximately causes a (4) resulting compensable injury. [Citations.]"

While defendants have admitted liability, that admission goes only so far as to acknowledge that they owed a duty to plaintiff and that they breached that duty. It is the result of that breach which was not properly determined at trial and must therefore be considered at a new trial.

■■ There are two aspects to the issue of damages. The first is the fact of the damage itself, which requires the showing of a causal connection between defendants' actions and plaintiff's injury. (See, *e.g., De Koven Drug Co. v. First National Bank* (1975), 27 Ill. App. 3d 798, 327 N.E.2d 378; *Manion v. Brant Oil Co.* (1967), 85 Ill. App. 2d 129, 229 N.E.2d 171.) The second is the determination of the extent of damages, which requires that a monetary value for the damages claimed be established. The rulings of the trial court in the instant case led to an improper assessment of damages in that the hypothetical question and resulting expert opinion were based on facts not in evidence, and defendants were not allowed to introduce evidence that may have negated the very existence of certain injuries claimed to have been caused by their acts. Unlike the cases cited by plaintiff, the case at bar involves an error that was properly brought before this court and which has not been rendered harmless by the absence of a challenge to the amount of damages assessed.

We therefore adhere to our original disposition of this case, remanding it for a new trial solely on the issue of damages, which, as we have stated, includes both the fact and the extent of those damages. The petition for rehearing is denied.

SULLIVAN, P. J., and LORENZ, J., concur.