**Sophie Gordon, Appellant, v. Checker Taxi Company, Philip Zisken and Zisken Construction Company, Appellees.**

**Gen. No. 44,285.**

314

Opinion filed May 24, 1948. Released for publication June 8, 1948.

IRVING G. ZAZOVE, of Chicago, for appellant.

JESMER & JESMER, of Chicago, for certain appellee; JULIUS JESMER, of Chicago, of counsel.

VOGEL & BUNGE, of Chicago, for certain other appellees; L. H. VOGEL and GEORGE C. BUNGE, both of Chicago, of counsel.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Plaintiff brought this action for personal injuries in the circuit court of Cook county, against defendants Checker Taxi Company, Philip Zisken and Zisken Construction Company. Upon a trial with a jury there was a verdict of not guilty for the taxi company and one of guilty against Zisken and Zisken Construction Company for $3,000. Judgment was entered upon the verdicts. No evidence was offered by either defendant. From both verdicts and judgment plaintiff appeals.

Plaintiff was a passenger in one of the taxicabs owned and operated by the taxi company, which became involved in a collision with an automobile driven by defendant Zisken at the intersection of Crawford avenue and Fifth avenue in Chicago, on December 19, 1945.

Plaintiff seeks a reversal of the judgment upon the ground that the verdict against defendants Zisken is wholly inadequate and was brought about by the prejudicial conduct of counsel for said defendants; that the amount of actual damages proven as a direct re-

sult of the alleged negligence of defendants allowed little for her injuries, pain and suffering; that the verdict of not guilty for the taxi company was likewise the result of prejudicial conduct upon the part of its counsel, and that erroneous instructions were given on its behalf.

Plaintiff claims she was rendered unconscious, became nauseated, was taken to the hospital from the cab in a wheel chair; that she was injured about her head, neck and face; that she remained in the hospital nine days; that she was removed from the hospital in a wheel chair and taken by automobile to her home and put to bed; that she remained continuously in bed for two weeks and was confined most of the day to her bed for four or five weeks thereafter; that she continues to suffer constant pain in the right side of her head, neck, back and shoulder. There was medical evidence to the effect that she sustained a cerebral concussion, spasms of rigidity along the cervical muscles and injury to the spinal vertebrae and muscles.

The claim of prejudicial conduct on the part of counsel for defendants Zisken is based upon a series of questions asked by defendants' counsel on cross-examination of plaintiff, which developed an admission from plaintiff that she had a previous accident in 1932 or 1933 and a suit for injuries against the Motor Coach Company. As to the former accident, the following questions were put to plaintiff on cross-examination:

"Q. Did you tell Mr. Zazove that you had sustained injuries to your spine and brain?

A. No, sir.

. . . .

Q. Do you recall being examined in the office of Doctor Serlin?

A. No, sir.

Q. Were you examined at that time by a Doctor Van Dorf?

A. At the hospital?

Q. On April 24, about April 24, 1935, were you examined?

A. No, sir.

Q. Were you examined by Doctor Van Dorf?

A. No, sir.

Q. Or Doctor Serlin?

A. No, sir.

Q. Did you ever hear of these men before?

A. No, sir.

Q. I will ask you if it isn't true that on or about the 24th day of April, 1935, you were examined by Doctor Serlin, or Doctor Van Dorf, and Van Dorf?

A. No, sir.

Q. In connection with the claim you had against the Motor Coach Company, then pending?

A. No, sir.

Q. Then pending in the Circuit Court of Cook County?

A. No, sir.

Q. I will ask you if it isn't also true that at that time you told Doctor Van Dorf—

A. I didn't tell him anything because I don't know the name.

Q. Very well, let me finish, please. You told Doctor Van Dorf that as a result of the accident with the Motor Coach Company, you had sustained injuries to

your back and that your back pained you on that occasion?

A. That is untrue, because I don't know him or the name.

Q. Did you say any such thing to Doctor Serlin?

A. I don't know any such doctor.''

It appears from the evidence that plaintiff's sister was in the taxi in the accident in the instant case. Whether the sister was injured and to what extent does not appear, but the following question was put to plaintiff on cross-examination by counsel:

''Mr. Vogel: Do you know how many claims for personal injuries your sister had, prior to this one?

Mr. Zazove: I object to that, Your Honor.

The Court: Don't answer. Objection sustained.''

Plaintiff vigorously complains that these questions on cross-examination created such prejudicial effect upon the jury as to result in a wholly inadequate verdict against defendants Zisken. Counsel for these defendants now suggests that these questions were not objected to, except the last one quoted, and, therefore, plaintiff cannot now be heard to complain. Defendants' position is untenable. The questions propounded on cross-examination of plaintiff, except the last one, were proper if asked in good faith for the purpose of impeachment in the event of denial, and had objection been made the court would be obliged to overrule the objection. Proof of the facts involved in such questions would obviously affect plaintiff's present claim for injuries, pain and suffering. Innuendoes involved in such questions are sometimes more damaging than an effort to prove the impeaching facts. When no witness is offered to im-

peach plaintiff and, therefore, no opportunity for cross-examination presented, the prejudicial effect springing from such questions cannot always be overcome, and results in an unfair trial to a plaintiff. If, under the guise and pretense of laying a foundation for impeachment, a plaintiff could be asked questions that would affect her credibility, such as a supposed former conviction for a felony (ch. 51, § 1, Ill. Rev. Stat. 1947 [Jones Ill. Stats. Ann. 107.067]), where production of the record of conviction is not required, and no proof made or offered, when there is a denial of the fact; or suppose questions were asked concerning alleged conversation with others, which involves very damaging supposed admissions against interest, and though denied by the witness, no proof is offered to impeach, such type of cross-examination, if approved, could succeed in defeating many a meritorious cause.

The prejudice injected by this cross-examination is aggravated by instruction No. 20, requested and given for defendants Zisken, wherein the jury was told that the burden was upon the plaintiff to prove by a preponderance of the evidence not only that the ailments and disability complained of really exist, or have existed, but are the result of the occurrence complained of, and that the burden of proof is not upon defendants to prove such ailments or disability came from or resulted from some other cause. The jury could well infer from the language of this instruction that the other cause refers to the previous accident, around which the foregoing cross-examination centered. The intent to emphasize the prejudicial cross-examination is reflected in this instruction.

We cannot place our stamp of approval upon such trial practice. It does not result in a fair trial according to settled standards, and a verdict so obtained should not be permitted to stand. *Wellner v. New York Life Ins. Co.,* 331 Ill. App. 360, 365.

██ The principle announced in *Bishop v. Chicago Junction Ry. Co.*, 289 Ill. 63, at p. 71, clearly applies to this situation. It was there said:

"While it is regretable that this case must be reversed because of improper conduct of intelligent and able counsel, yet if courts of law are to be sources of justice, the rule that parties litigant, regardless of who they may be, shall have secured to them the opportunity to have the issues of their case tried by a jury free from the prejudicial influence of improper conduct of counsel must be strictly enforced."

In view of the conclusion reached that a new trial must be had as to defendants Zisken, we shall express no opinion as to the adequacy of the verdict.

██ As to the taxi company, the complaint of plaintiff of the prejudicial conduct of counsel for that defendant rests upon the cross-examination by its counsel of Philip Zisken, who was called by plaintiff as an adverse witness under section 60 of the Civil Practice Act [Ill. Rev. Stat. 1947, ch. 110, par. 184; Jones Ill. Stats. Ann. 104.060]. When plaintiff completed the cross-examination of the witness, the cross-examination by counsel for the taxi company followed, and the record discloses the following:

"Mr. Jesmer: And you told this cab driver, didn't you, Mr. Zisken, at the scene of this accident, that it looked to you like this accident was framed, didn't you?

. . .

The Witness: I did not.

Mr. Jesmer: I won't pursue that any more. I am in error with that—it wasn't with the cab driver, the conversation took place, anyway.

Mr. Zazove: I object to that. I move that be stricken out, the voluntary gratuitous remarks here—he made

a statement just now and I move it be stricken, your Honor.

The Court: It will be stricken.''

Not only did counsel for the taxi company ask a question that could arouse prejudice with the jury, but when the answer was a denial counsel undertook to supply a fact, which he did not prove, by the statement ''it wasn't with the cab driver, the conversation took place, anyway.'' It left a clear inference that the conversation did take place, not with the cab driver, but with some person unnamed. Although the statement by counsel was stricken, the highly prejudicial effect of the question could not be removed by the court's ruling. Thus, plaintiff was forced to try her cause on two battle fronts of prejudice created by these defendants, which deprived her of a fair trial. We said in *Wellner v. New York Life Ins. Co., supra*:

''The defendant is entitled to a fair trial, free from prejudicial conduct of counsel, who in an argument undertakes to supply facts, or an inference favorable to the plaintiff not based upon any evidence in the record.''

On behalf of the taxi company instruction No. 13 was given the jury, which reads:

''The court instructs the jury that the burden of proof is not upon the defendant, Checker Taxi Company, a corporation, to disprove the alleged occurrence complained of in the complaint, or that the driver of its taxicab exercised reasonable care, but the burden of proof is upon the plaintiff to prove by a preponderance of all the evidence that the defendant, Checker Taxi Company, a corporation, failed to exercise reasonable care at the time of the alleged occurrence complained of in the complaint or immediately prior thereto, and that such failure, if any, was the proximate cause of the accident, and if the plaintiff has not

made such proof by a preponderance of the evidence you should find the defendant, Checker Taxi Company, a corporation, not guilty.''

■■ This instruction directs a verdict and must, therefore, contain the correct rule of law. The duty under the law on the part of a carrier toward its passenger is to exercise the ''highest degree'' of care instead of ''reasonable'' care. *Louis v. Checker Taxi Co.*, 318 Ill. App. 71.

■ Instruction No. 18, given for the taxi company, in substance told the jury that a common carrier is not an insurer of the absolute safety of its passengers, and that all the law requires is that it use the highest degree of care consistent with the mode of conveyance adopted and the practical operation of its business. This instruction was inconsistent with the rule stated in instruction No. 13. Such inconsistent instructions can only help to confuse a jury (*Illinois Match Co. v. Chicago, R. I. & P. Ry. Co.*, 250 Ill. 396) and when combined with the prejudicial conduct of counsel referred to, constitutes reversible error.

Other questions raised by plaintiff, we deem unnecessary to consider.

The judgment of the circuit court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

NIEMEYER, P. J., concurs.