ROBERT J. FERENBACH II, Plaintiff-Appellant, *v.* MICHAEL DeSYLLAS, Defendant-Appellee.

Fourth District   No. 13473

Opinion filed February 10, 1977.

Rammelkamp, Bradney, Hall & Dahman, of Jacksonville (Larry D. Kuster, of counsel), for appellant.

Flynn & Flynn, of Jacksonville (Larry J. Flynn and Leo F. Carroll, of counsel), for appellee.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

This is an appeal from a jury verdict entered March 28, 1975, in favor of defendant-counterplaintiff, Michael DeSyllas (hereinafter defendant), against Robert J. Ferenbach II (hereinafter plaintiff). The lawsuit arose out of an accident which occurred at 8:40 p.m. on March 19, 1971, on Illinois Route 36-54 near Jacksonville, Illinois. Plaintiff was driving his auto in a westerly direction and struck defendant's pickup truck which was stopped on a highway bridge due to what defendant believed to be a failure in the steering mechanism. Road conditions were icy and it was dark.

On February 1, 1973, defense counsel took plaintiff's discovery deposition containing, in part, in the following questions and answers:

"Q. Do you recall laying down across the seat prior to the time of the collision?
A. No.

Q. Do you recall of ever having told anyone that you did that prior to the collision?

A. No.

Q. I take it you have no recollection of saying to anyone that when you first saw what turned out to be this truck, you thought it was a construction barricade?

A. No.

Q. Then I would take it you have no recollection of saying that you thought the flashing lights were a barricade as opposed to a truck?

A. I didn't see any flashing lights."

Following this deposition, plaintiff propounded the following supplemental interrogatory:

"[*Interrogatory No. 1:*] State the name and address of each and every person having knowledge of or possession of any statements made by Robert J. Ferenbach II with regard to this accident, particularly, but not limited to, any statements he may have made as to his impression of the accident scene as he approached and any actions he may have taken immediately before the accident."

Defendant answered as follows:

"Erwin Schwagmeyer, Bluffs, Illinois, and plaintiff." On November 21, 1973, plaintiff filed a motion to produce, moving for production by defendant of any statement made by a witness to the occurrence alleged in the complaint or any person with knowledge of matters relevant to the lawsuit. The record fails to show that anything was ever produced by defendant in response to this motion.

At trial on March 27, 1975, in the presence of the jury, defendant's counsel asked plaintiff about a conversation he had with defendant's wife at the hospital:

"Q. Do you recall telling her that when you came up on the bridge you saw flashing lights and that you thought it was a barrier for construction and that you laid down across the seat?

A. No."

Plaintiff did not object to this question being asked.

Later, defense counsel, in the jury's presence, called Mrs. DeSyllas to the stand. Plaintiff's counsel immediately asked to approach the bench and the jury was excused. Out of their presence, plaintiff moved to bar Mrs. DeSyllas from testifying on the ground that her name had not been furnished to plaintiff in response to supplemental interrogatories. Counsel moved to have the cross-examination of the plaintiff, regarding plaintiff's laying down on the seat prior to impact because he thought the flashing lights were a construction barrier, stricken and the jury instructed to disregard it.

The court denied plaintiff's motion on the condition that plaintiff's attorney be allowed to talk with Mrs. DeSyllas. Then plaintiff moved for a directed verdict on his complaint, a directed verdict in his favor on defendant's counterclaim, and a mistrial—all on grounds of unjust surprise. All were denied.

In questioning Mrs. DeSyllas, plaintiff's counsel learned that she was going to testify that three other people, besides herself, none of whom she could remember, allegedly heard plaintiff make the statement about "thinking the flashing lights were a construction barricade and lying down in the seat." Plaintiff expressed surprise to learn of these revelations and pointed out to the court that neither the names of these three witnesses nor Mrs. DeSyllas were provided by the defendant in response to the supplemental interrogatories or motion to produce. Plaintiff's request for a continuance was denied. After defendant made an offer of proof, a synopsis of what Mrs. DeSyllas would testify, the court ruled inadmissible Mrs. DeSyllas' testimony relating to her conversation with plaintiff about what he thought as he approached the point of impact. In addition, the court ruled to strike the foundation questioning of plaintiff regarding his laying on the seat just prior to the collision. Plaintiff then withdrew his motion to have this testimony stricken and the jury instructed to disregard it.

The court recalled the jury and told them that the evidence had concluded. The jury returned a verdict in favor of defendant and against plaintiff in the amount of $10,000.

In denying the post-trial motion, the trial court indicated that it was convinced defendant's failure to list Mrs. DeSyllas' name as a witness in response to interrogatories was unintentional and defendant's efforts to use her to impeach the plaintiff were made in good faith. The court felt that the sanction imposed—preventing Mrs. DeSyllas from testifying and offering to admonish the jury to disregard the improper impeachment foundation—was appropriate to protect plaintiff from undue prejudice and was not prejudicial error.

Clearly, defendant failed to comply with discovery rules in not listing a witness who had allegedly heard the plaintiff make damaging admissions. Then, in cross-examining plaintiff, defendant's counsel laid the foundation for impeaching plaintiff with this witness' testimony. The issue is, therefore, whether it was an abuse of discretion for the trial court to prevent the witness from testifying instead of the more severe sanction of declaring a mistrial. We hold that the trial court did not abuse its discretion.

■■ As a general rule, a motion for a new trial is to be determined in the sound discretion of the trial judge. His decision is afforded a degree of finality since he personally observed all of the testimony, the arguments, the parties, the conduct of counsel, and the effect of all this on the jury.

(*Martin v. Kralis Poultry Co.* (1973), 12 Ill. App. 3d 453, 297 N.E.2d 610.) Because he was there, the trial judge is in a better position than a reviewing court to decide whether or not substantial justice has been done. For these reasons, the judgment of the trial judge on a motion for a new trial will not be reversed absent a clear abuse of discretion which must affirmatively appear in the record. *Blake v. Delhotel* (1976), 39 Ill. App. 3d 725, 350 N.E.2d 880; *Ramseyer v. Illinois Central R.R. Co.* (1969), 110 Ill. App. 2d 95, 249 N.E.2d 120.

Plaintiff contends that he was uncorrectably prejudiced by opposing counsel's tactics in calling Mrs. DeSyllas as an impeaching witness. Obviously, this placed plaintiff's counsel in the unenviable position of having to choose whether to stand up and object to her taking the stand, which might give the jury the impression he was trying to hide impeaching testimony, or whether to let her testify knowing she would in all likelihood contradict plaintiff's testimony and that because her name had not been furnished in discovery, plaintiff had no deposition to aid him in impeaching her in-court testimony. Naturally, this situation could have been avoided had defendant supplied Mrs. DeSyllas' name in response to plaintiff's interrogatories. But the trial judge was of the belief that defense counsel's actions were inadvertent and that foundation questions were asked in good faith with full intent to impeach the plaintiff.

■■ We see no reason to disturb this finding since, whether deemed intentional or inadvertent, defendant's failure to comply with discovery here was "unreasonable" within the meaning of Supreme Court Rule 219 which authorizes trial courts to impose sanctions for unreasonable failure to comply with discovery orders or rules (Ill. Rev. Stat. 1975, ch. 110A, par. 219). The decision to employ sanctions, and what sanctions to use, is within the trial judge's discretion. (*Buckler v. Sinclair Refining Co.* (1966), 68 Ill. App. 2d 283, 216 N.E.2d 14.) Likewise, the question whether a party has been denied a fair trial by misconduct of opposing counsel is within the sound discretion of the trial judge, not reviewable except for clear abuse. *Johnson v. Cunningham* (1969), 104 Ill. App. 2d 406, 244 N.E.2d 205.

In the instant case, the trial judge was convinced that the jury was not unduly prejudiced by the sequence of events. This undoubtedly led him to choose the sanction of preventing Mrs. DeSyllas from testifying. In addition, the judge offered to admonish the jury to disregard the groundwork questioning by defense counsel. Plaintiff first asked that the jury be admonished, then as a matter of trial tactics, decided not to have the judge make any admonishment. Plaintiff should not be heard to complain now since his choice of tactics prevented the use of a device which could have helped mitigate any potential prejudice.

Furthermore, the resulting prejudice may well have been minimal. While cross-examining the plaintiff, defense counsel asked only one

question that alluded to any admissions made by plaintiff to defendant's wife. Because plaintiff made no objection, the jury was not alerted to the significance of the question. Also, when Mrs. DeSyllas was called to testify, plaintiff's attorney merely asked to approach the bench and did not allow the jury to hear the substance of his objection. These facts support the trial judge's finding that the effect of all this on the jury was not overly prejudicial. Certainly he was in a better position than we to evaluate whether in the course of these events the jury drew inferences unfavorable to the plaintiff.

Cases cited by plaintiff in his brief are distinguishable. In *Battershell v. Bowman Dairy Co.* (1961), 37 Ill. App. 2d 193, 185 N.E.2d 340, the court found reversible error where a party produced a surprise witness at trial, contrary to interrogatory answers, and the witness was allowed to testify. Here, the witness did not testify, and the court in *Battershell* noted that the exclusion of the witness would have been a proper sanction. (37 Ill. App. 2d 193, 202-03, 185 N.E.2d 340, 344.) Furthermore, plaintiff's reliance on *Ramseyer* is unfounded. In that case, plaintiff's only occurrence witness was being cross-examined by defense counsel and asked foundation questions indicating that the witness had made prior inconsistent statements to a third party. No defense witness was ever offered to impeach plaintiff's occurrence witness, but unlike the instant case, the trial court declared a mistrial believing defense counsel's actions were prejudicial.

*Danzico v. Kelly* (1969), 112 Ill. App. 2d 14, 250 N.E.2d 801, is distinguishable for several reasons. There, when defendant's attorney began to lay the groundwork to impeach plaintiff, plaintiff's attorney strenuously objected to the questioning unless defendant could produce the impeaching witness. The objection was overruled and the motion to have the testimony stricken and disregarded was also overruled, even though the impeaching witness failed to testify. The jury returned a wholly inadequate verdict, less than plaintiff's actual damages, and the court ordered a mistrial since it was convinced that the jury had been prejudicially influenced. Here, unlike in *Danzico*, it is not clear that any prejudice resulted. The verdict for defendant was likely due to a belief that plaintiff was traveling too fast for conditions. Evidence showed that approaching vehicles were able to stop without colliding with plaintiff's or defendant's vehicles which were still on the highway following the accident.

■■ In *Gordon v. Checker Taxi Co.* (1948), 334 Ill. App. 313, 79 N.E.2d 632, defense counsel asked plaintiff on cross-examination whether he had made certain damaging admissions to a third party. Plaintiff denied that he had, and defendant failed to produce the third party to impeach. Unlike in *Gordon*, where the impeaching witness was only a

figment of the defense counsel's imagination, here, defendant actually called Mrs. DeSyllas to testify. Moreover, in *Gordon*, the court also considered the prejudicial effect of inconsistent jury instructions saying that "[s]uch inconsistent instructions can only help to confuse a jury [citation] and when combined with the prejudicial conduct of counsel referred to, constitutes reversible error." (334 Ill. App. 313, 322, 79 N.E.2d 632, 636.) Thus, *Gordon* is not clear precedent in the instant case because we cannot be sure how much the prejudicial effect of the jury instructions contributed to the finding of reversible error.

On this record, we cannot find the trial judge abused his discretion in not granting a mistrial.

Affirmed.

GREEN and MILLS, JJ., concur.